UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| SHERRIE POFF, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 06 C 50135 |
| | ) | |
| ROCKFORD PUBLIC SCHOOL | ) | |
| DISTRICT #205, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND ORDER

FREDERICK J. KAPALA, District Judge:

Plaintiff, Sherrie Poff, has sued her former employer alleging discrimination and retaliation in violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 et seq., the Rehabilitation Act, 29 U.S.C. § 701 et seq., and the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq. Defendant has moved for summary judgment, and, for the reasons stated below, the court grants the motion.

**I.  BACKGROUND**

According to the relevant, undisputed facts, plaintiff formerly was employed by defendant as an Applications Supervisor, a position in which she reported directly to the Director of the Food Services Division, Christine Saletta. In 2001, plaintiff began to behave in an unusual fashion at work and was observed, on multiple occasions, sitting at her desk and staring into space. These occurrences, which the parties refer to as "spells," were the result of plaintiff's diagnosed mental illness known as dissociative disorder, and they happened on four separate occasions during

plaintiff's tenure.[1] During these spells, which lasted for approximately 30 minutes, plaintiff would be unresponsive and unable to communicate, see, or move. After one such spell, in February 2002, plaintiff was hospitalized for a week in the psychiatric unit.

According to defendant, during this time period, plaintiff's work product began to plummet, and these concerns were documented in a March 27, 2003 written evaluation. According to the evaluation, plaintiff's quality and quantity of work had decreased, her performance in certain areas had reached an "unacceptable level," and her spells were disruptive to the workplace. The evaluation warned, "Unless this situation is quickly remedied, we will have no choice but to terminate employment."

On May 30, 2003, plaintiff began an approved FMLA leave, based on a medical certification submitted by her treating therapist, Jim Parrish. Plaintiff's leave initially was expected to last for 30 days but, after two subsequent extensions based on Parrish's request and/or additional certification, continued until the latter half of October 2003. Following the first extension, which was for a period of at least 60 days, defendant notified plaintiff of its intent to fill the position with a qualified applicant and, upon her return from medical leave, to place plaintiff "in another position at an equivalent level to the position you previously held."

On October 21, 2003, Parrish wrote defendant a letter stating that plaintiff was released to return to work on October 27, 2003. He explained that plaintiff "has been doing well for an adequate length of time to indicate that she will be able to handle the normal stress of a typical employment situation." Parrish did set forth "one stipulation" on her return to work – "that she not

---

[1] Plaintiff admits that there were four "major" spells, but also claims that she suffered from "minor" spells as well. Although defendant disputes this fact, this dispute is not material and does not affect this court's decision.

work with or under the supervisor she had previously." Parrish also included in the letter a brief discussion on "how to handle the situation" if plaintiff had another "spell," which he noted was "quite unlikely" to occur. Among other things, Parrish instructed that, if a spell at work were to occur, someone should "simply ask a sympathetic coworker, who will not overreact, to stay with [plaintiff] to stabilize her so that she will not fall to the floor."

On October 24, 2003, defendant informed plaintiff that Parrish's restriction prohibited her from assuming the duties of her previous job, and that there were no equivalent positions available. This letter from defendant also informed plaintiff that she could "seek to be considered for other positions with the Rockford Public Schools for which [she was] qualified for or take qualification tests to establish qualifications for positions." Rather than seeking a different position, plaintiff was allowed to remain at home and use the rest of her sick days and personal business days, which lasted until December 8, 2003.

On December 2, 2003, plaintiff met with personnel from defendant's Human Resources department and again was advised that the only comparable job they could place her in was her old position, but that Parrish's restrictions prevented that from occurring. Following the meeting, defendant sent plaintiff a letter dated December 4, 2003, which indicated, among other things, that plaintiff could have her old position back if the restrictions from her doctor were removed, but noted that, "Since your last performance evaluation was unsatisfactory, your performance would be closely monitored and if it did not improve to the satisfactory level, disciplinary action up to and including termination of employment would be taken." The letter also required plaintiff to notify defendant by December 14, 2003, if she would be able to return to her former position, or if there were any other vacant positions she wanted to apply for. Finally, the letter advised that if defendant could not

3

place plaintiff in a vacant position or her previous position, then she would be laid off effective December 16, 2003.

On December 10, 2003, plaintiff sent defendant a letter of resignation, in which she stated that she was "officially retiring." (Emphasis removed). In the letter, plaintiff also expressed her intent not to work with or under her former supervisor, Saletta, and acknowledged that there were no other positions available for her. She concluded, "Because I am to respond to you by December 14, 2003, and looked at your options, I have chosen to retire." After obtaining a right to sue letter from the EEOC, plaintiff brought the instant lawsuit.

## II. DISCUSSION

Defendant has moved for summary judgment, arguing, among other things, that plaintiff did not suffer a constructive discharge. Defendant also argues that plaintiff's claims for failure to accommodate also fail because, among other reasons, plaintiff never requested a reasonable accommodation. Because these arguments are dispositive, the court need not reach the other issues raised by defendants.

### A. Constructive Discharge

In order to prevail on her claims for discrimination under the ADA and Rehabilitation Act, and retaliation under the ADA and the FMLA, plaintiff is required to show, as part of her prima facie case for each claim, that she suffered an adverse employment action. See, e.g., Lloyd v. Swifty Transp., Inc., 552 F.3d 594, 601 (7th Cir. 2009) (discussing discrimination and retaliation claims under the ADA); Garg v. Potter, 521 F.3d 731, 736 (7th Cir. 2008) (discussing discrimination claim

4

under the Rehabilitation Act); Buie v. Quad/Graphics, Inc., 366 F.3d 496, 503 (7th Cir. 2004) (discussing retaliation claim under the FMLA).

In her pleadings, the only adverse employment action plaintiff alleges is a constructive discharge. The following allegation from Count I is typical:

> [Defendant] . . . began an ongoing course of conduct which made her position of employment so difficult and intolerable so as to constitute a constructive discharge in December of 2003, with conduct including harassing remarks, verbal threats to her continued employment, refusals to honor her requests to discus [sic] her position, a change from primarily positive evaluations to a negative evaluation, and cessation of meaningful oral communications from her supervisor and posting her job to be filled by other applicants.

Before proceeding any further, it is important to note that the Seventh Circuit has not yet decided whether a claim for constructive discharge based on a hostile work environment is cognizable under the ADA or Rehabilitation Act, but instead has only assumed that such claims exist where resolution of the issue was not necessary. See Lloyd, 552 F.3d at 603; Mannie v. Potter, 394 F.3d 977, 982 (7th Cir. 2005). The Seventh Circuit further assumes that "the standards for proving such a claim would mirror those we have established for claims of hostile work environment under Title VII." Mannie, 394 F.3d at 982. This court will proceed with the same assumptions made by the Seventh Circuit in analyzing plaintiff's claim that a hostile environment caused her to be constructively discharged.

While it is true that "[c]onstructive discharge, like actual discharge, is a materially adverse employment action," EEOC v. Univ. of Chi. Hosps., 276 F.3d 326, 331 (7th Cir. 2002), it is difficult to establish such a claim. In order to demonstrate constructive discharge, "the plaintiff must show that she was forced to resign because her working conditions, from the standpoint of the reasonable employee, had become unbearable." Id. This requires the plaintiff to "demonstrate that the

5

workplace was both subjectively and objectively hostile. An objectively hostile environment is one that a reasonable person would find hostile or abusive." Mannie, 394 F.3d at 982 (citations omitted). "Generally, to support such a claim, a plaintiff's working conditions must be even more egregious than the high standard for hostile work environment claims, because, in the ordinary case, an employee is expected to remain employed while seeking redress." Boumehdi v. Plastag Holdings, LLC, 489 F.3d 781, 789 (7th Cir. 2007).

In this case, the court concludes that plaintiff has not presented sufficient evidence in support of her claim of constructive discharge in order to survive summary judgment. Plaintiff presents some evidence to establish that Saletta was difficult to work with and had become distant with her after one of plaintiff's spells. She also complains that she received an unsatisfactory evaluation, was warned that a failure to improve would result in termination, and that defendant posted her position as available while she was on leave. None of these acts, either independently or collectively, amount to a hostile work environment that is sufficiently severe or egregious to cause to a constructive discharge.

A review of cases in which a claim for constructive discharge has been allowed to proceed demonstrates the level of egregiousness required, and that plaintiff's claim does not meet this high standard. See, e.g., Patton v. Keystone RV Co., 455 F.3d 812, 818 (7th Cir. 2006) (concluding that a constructive discharge claim was reasonable where plaintiff feared that her supervisor "was an obsessed man who . . . was capable of, and desirous of, physically assaulting her in a serious way"); Taylor v. W. & S. Life Ins. Co., 966 F.2d 1188, 1191, 1198-99 (7th Cir. 1992) (finding constructive discharge when the plaintiffs' boss constantly peppered the plaintiffs with racist comments, brandished a pistol and held it to one plaintiff's head); Brooms v. Regal Tube Co., 881 F.2d 412,

417, 423 (7th Cir. 1989) (finding that the plaintiff established constructive discharge where "repeated instances of grossly offensive conduct and commentary" culminated with an incident during which a co-worker showed the plaintiff a racist pornographic photograph, told her that she was hired to perform the task depicted in the photograph, grabbed the plaintiff and threatened to kill her), overruled on other grounds by Saxton v. Am. Tel. & Tel. Co., 10 F.3d 526, 533 & n.12 (7th Cir. 1993). Although there is no bright-line standard requiring serious physical harm, these cases are illustrative of the type of severe conditions that must be present in order to prevail on a claim for constructive discharge, because "[w]hen it becomes reasonable to fear serious physical harm, it becomes reasonable to quit immediately rather than seek redress while on the job." Patton, 455 F.3d at 818.

Here, there is nothing in the record to establish that a reasonable person would find plaintiff's workplace hostile or abusive, even if plaintiff subjectively felt that way. Instead, the evidence only suggests, at most, a stressful office environment and perhaps a personality conflict with plaintiff's supervisor. See, e.g., Roeder v. Hendricks Cmty. Hosp., No. IP00-0447-C-H/G, 2001 WL 1168151, at *12 (S.D. Ind. Sept. 7, 2001) (concluding that the plaintiff's claims that it was intolerable to work with her supervisor because of "personal issues" was insufficient to establish a claim for constructive discharge under the ADA). Accordingly, plaintiff's claim that she was constructively discharged fails as a matter of law and, consequently, she is unable to establish a prima facie case for any of her claims for discrimination or retaliation.

### B. Failure to Accommodate

The only remaining claim, to the extent it can be considered separately, is plaintiff's claim that she was denied a reasonable accommodation. "To establish a claim for failure to accommodate,

7

a plaintiff must show that: (1) she is a qualified individual with a disability; (2) the employer was aware of her disability; and (3) the employer failed to reasonably accommodate the disability." EEOC v. Sears, Roebuck & Co., 417 F.3d 789, 797 (7th Cir. 2005). Similar to the plaintiff in Weiler v. Household Finance Corp., 101 F.3d 519 (7th Cir. 1996), in this case, plaintiff cannot establish a claim for failure to accommodate when her requested accommodation was merely to transfer her to a new supervisor.

In Weiler, the plaintiff had an annual employment review that "did not go smoothly," and which involved, according to the plaintiff, her supervisor raising his voice, lunging across the table, and making the plaintiff "very uncomfortable with his tone of voice and sarcasm." Id. at 522. After the meeting, the plaintiff requested a transfer to a different supervisor, but was told that no such position was available. Id. Shortly thereafter, the plaintiff's psychotherapist contacted the plaintiff's employer and stated that the plaintiff was "temporarily disabled by depression and anxiety" and was unable to work. Id. at 523. The plaintiff was provided with short-term disability benefits for her condition for six months, the maximum allowable. Id. Approximately nine months after the unfavorable employment review, the human resources director contacted the plaintiff regarding five available positions in her salary grade, but she chose not to apply for any of them. Id. Instead, the plaintiff brought suit claiming disability discrimination in violation of the ADA. Id.

In Weiler, the Seventh Circuit first concluded that the plaintiff did not have a disability, as that term was defined under the ADA, reasoning that "[t]he major life activity of working is not 'substantially limited' if a plaintiff merely cannot work under a certain supervisor because of anxiety and stress related to his review of her job performance." Id. at 524. The court further explained, "Weiler claims she can do her job, but not while being supervised by Terry Skorupka. If Weiler can

8

do the same job for another supervisor, she can do the job, and does not qualify under the ADA."
Id. at 525.

The court in Weiler also considered whether the plaintiff's employer failed to provide a reasonable accommodation under the ADA and concluded that its actions were proper. See id. at 525-26. In doing so, the court specifically rejected the plaintiff's contention that she should have been given a different supervisor: "Weiler's solution is that she return to work under a different supervisor. But that decision remains with the employer. In essence, Weiler asks United States to allow her to establish the conditions of her employment, most notably, who will supervise her. Nothing in the ADA allows this shift in responsibility." Id. at 526.

The instant case is analogous to Weiler in many respects. Here, plaintiff was cleared to return to work but requested as an accommodation, through her therapist, that she receive a different supervisor. If working under Saletta was the only thing preventing plaintiff from returning to work, then she does not have a disability for purposes of the ADA. See id. at 524-25. Moreover, even if plaintiff is considered disabled, she is not entitled to change the conditions of her employment by demanding a different supervisor. See id. at 526. Ultimately, defendant was not required to accommodate plaintiff's request to be placed under a different supervisor, and thus, plaintiff's claim for failure to accommodate fails at summary judgment as well.[2]

---

[2] Plaintiff also discusses whether the failure to provide a "sympathetic coworker" was a failure to accommodate. The court does not view this as a requested accommodation, but rather, as it is explicitly referred to in Parrish's letter, this was merely guidance on how to handle the unlikely situation of plaintiff suffering from another spell while at work. In any event, this proviso was dependent on plaintiff returning to work, something which she never did.

## III. CONCLUSION

Based on the foregoing, the court concludes that defendant is entitled to summary judgment on all counts, and thus, its motion for summary judgment is granted. As a result, defendant's motion to strike is denied as moot.

Date: February 25, 2009

ENTER:

_____

FREDERICK J. KAPALA
District Judge